Good morning. Can the attorneys on Hussey v. Chase Manor approach the podium and identify yourselves for the record, please? Morning, Your Honor. Evan Smola for the plaintiff appellant. Morning, Your Honor. Ellen O'Rourke for defendants. All right, Mr. Smola. It's 20 minutes. Did you want to apportion your time? Fifteen and five would be great, Your Honor. Thank you. All right, Mr. Smola, you can proceed. May it please the court, counsel, the fundamental question to the case before the court is whether Ms. Hussey in this instance fell on a sidewalk as defined by the Snow and Ice Removal Act or whether she fell somewhere else. As sort of a thought experiment on this case, I took the photos where she identified the location of her fall and asked people, is this a sidewalk? And virtually no one would identify the location of her fall as a sidewalk. It is within the parking lot behind the condominium, is that correct? That is correct. So it's not how we would typically view a sidewalk, where grass is on both sides or a curb is on the side of it, correct? Correct. It is contained within the parking lot. It is within the common area parking lot of the condominium association. Is it blocked on either side? I mean, the picture almost looks like an alley, sort of. It does look a lot like an alley. It's a little bit odd. If you look, it's hard to recreate exactly what it would have looked like on the day of the incident. Is it a through area? Could you come in from either side by car? There are parking blocks to the, I believe it's to the east, a series of parking blocks. And then there are parking blocks alongside the building. And you can come along the back behind the parking lots and park this way. So cars would occasionally drive on this area that you're considering a sidewalk? Regularly drive on this area. If you look, the parking blocks would have cars facing interior to where she was walking. She walked to actually avoid a car that would normally have been parked immediately to her right, directly adjacent to the building. Some of the cars parallel park, sort of parallel to the rear. And then there's another group that park perpendicular to it. And there's a space in the middle. You're exactly right. And the space in the middle, what we're calling sidewalk, also is used for a car track. Correct. For any of the individuals that own condos in the building that also have a parking space, that's where the parking spaces are. So they would drive along that area, park either, I think one or two park perpendicular, or I'm sorry, parallel to the building, and three or four park perpendicular to the building. And there would be a throughway in between. But does it dead end? It sort of dead ends in that you can't go on to another alley, but you can go around the back of the parking blocks to go out a different, sort of a different exit that's also alley-like. Okay, so if you were driving your car in the direction that Rita Hussey was walking when she slipped. Sure. I don't have my north-south on this. No, right. But if you're looking at the photos, you put an X on kind of the right side of the photo, right? Correct. So if you're going down that direction, can you keep going? You can. You can keep going and you can go around. It's frankly a little bit difficult to see, but at the end of this alleyway, the parking blocks come to an end and you can circle around those parking blocks and come back towards the street in that direction. So you wouldn't go through. It's not an alley where you'd go block to block. Okay, that's what I was asking. It is an alley that you would circle around to get to other parking spaces, to get to, I think, the dumpsters are over there. Okay. So, I mean, it is a piece of property used primarily for parking, and Ms. Hussey happened to use it to walk to her laundry room. But people routinely used it to walk. People did. Certain condos needed to exit the building. Certain owners needed to actually exit the building. It must be something with the layout of the building to walk there while others could access the laundry room interiorly. And the back door of the whole building. There's not a door there, right? There is a door in the back of the building, correct. So there's an exit in the back and there's a number of exits in the front. It's a fairly large building. It's hard to tell from the photos, but it's a larger apartment building, larger condo building. The question is whether or not the act should be expanded to include pieces of property such as this one. The Gallagher is undoubtedly critical of the flight case in that flight appears to read into the act pieces of property that the legislature easily could have included in the act. The legislature could have said, condo associations that clear parking lots, that clear alleyways, that clear common area spaces of snow and ice are not liable for the negligent clearing of parking lots, alleyways, and common area locations. The legislature didn't see fit to add that and instead limited the act to sidewalks. Now, there's no doubt that that has been expanded appropriately to certain pieces of property, common area property. So, for example, a sidewalk is relatively useless if there's no way to get from the sidewalk directly into your building, into your front door. So if you walk down any neighborhood in Chicago, everyone would see that there's a paved, typically a paved pathway from the sidewalk into your building. This court and other courts have appropriately included those paved pathways within the meaning of the act. Sidewalks have been discussed by this court and provided with definitions that are, frankly, all very similar. You, a case unfavorable to my client, nevertheless defined a sidewalk as a paved path set aside primarily for pedestrians. Blamo, a similar case, defined it as a concrete walk for foot passengers. There's, I don't believe any of this... This was a paved area and it was used, knowingly used by pedestrians to walk back. Has that been interpreted that it needs to be exclusively for pedestrians? Because I think that's where we're getting into trouble here. Sure. There is no doubt that this and many pieces of property, virtually any common area property at some point in time, is used by pedestrians. I mean, a grass yard could be used by pedestrians. Driveways are used by pedestrians. Parking lots are used by pedestrians. The question is whether it is a paved path set aside primarily for pedestrians, and that's not the case here. This is an alleyway used by cars to both enter and exit their parking spaces and to park there. There's no defined area that pedestrians use this part of the pathway where cars use that part of the pathway. But Rita Hussey wasn't walking from her car. She was carrying a load of laundry. She wasn't. She was walking through the parking lot of her building to get to her laundry room. But that doesn't, just because someone uses an area of common area as a means of ingress and egress doesn't convert it into a sidewalk. I mean, the bottom line here is even if you drill down to the conduct that caused her injury, the conduct was not the clearing of a pathway. The conduct described by Mr. Jackson was the clearing of the parking lot. He cleared the parking lot of a lot of snow he needed to clear. He says repeatedly he was under instruction to clear certain parking spaces so that people could park. He piled all of that snow against the building, and long after the other snow had melted, that snow melts and refreezes. This is not, if you think just fundamentally about the purpose of the act, it's to incentivize people to clear their sidewalks, right? I mean, it's probably the byproduct of a lot of municipalities mandating that, and so the legislature saw fit to immunize that type of conduct should it be negligent. It did not address parking lots, and the conduct, fundamental conduct here, is not Mr. Jackson clearing a small three-foot pathway for Ms. Hussey to get back to her laundry room. This occurred because he cleared the parking lot of snow and ice, and that's just simply not addressed anywhere within the act. Again, when a court reviews an act that is in derogation of the common law, such as the Snow and Ice Removal Act, it must do so narrowly and focus on the language contained in the act, and the language very easily could have included the piece of property at issue here. It very easily could have said any alleyways that abut or are adjacent to the property, any parking lots that abut or are adjacent to the property. The legislature chose not to do that for whatever reason. This court and other courts should not read that immunity into an act that's in derogation of the common law. That's what the trial court did. The trial court deprived a jury of determining whether or not this is a sidewalk, and did so as a matter of law, when I think reasonable minds could certainly disagree on whether or not this should be considered a sidewalk. Gallagher has this correct. The 2nd District Gallagher case has it correct in that the focus needs to be on the nature of the property with the understanding that pedestrians can traverse virtually any piece of property. That doesn't automatically make it a sidewalk. If there's any questions, I'm happy to answer. Otherwise, I'll reserve my five minutes. Thank you, Mr. Stahl. Thank you, Your Honor. Mr. Rupp? May it please the Court, Counsel? The issue in this case is not whether parking lots are controlled by MLA Snow and National Road Act. The issue is whether a walkway here within a parking lot comes under the MLA Snow and National Road Act. This was a walkway within a parking lot. In a small condominium building, there's only 14 units. This walkway within the parking lot was the road. Shouldn't that be a determination for a jury to make? I don't believe so, Your Honor, because I think whether it falls into the actual design... Do reasonable minds differ if that's actually a sidewalk or if it's part of a parking lot that people walk on? I don't believe so, Your Honor, because I think that's for the court to decide, because it involves a statute. So I think the court should decide that, and the circuit court decided... I agree it's part of a statute, but don't facts determine whether we interpret this as a sidewalk or a part of a parking lot? I think all the facts in this case indicate it was a walkway, Your Honor, respectfully. The entire parking lot was a walkway? No, this walkway... Which part was? The part that plaintiff's walking on and that she regularly, twice a week, walked on and others in the building walked on, was a walkway. They all walked in that same spot? Yes, they did, Your Honor, they did. Jason Jackson... This is a space, right? This isn't a target parking lot, right? Or a Best Buy parking lot where you've got all sorts of delineations and spray-painted lines and signs and a frontage that is clearly different than the parking lot. This is just the space behind a building. It is. And there's some parking blocks, and so sure, there's parking, and people are also walking. If there's a walkway, as you say, can you define for me what that walkway was, if it's not the entirety of the parking lot? It's not the entirety of the parking lot because... How wide was it? It was about, according to plaintiff, two feet wide. According to plaintiff's testimony, it was two feet wide. It came out the back door and went around to the laundry room. Was it delineated in any way? By blocks? No, it was not delineated. It was not delineated by that? No, it was not. And it was also frequently driven upon as well. It's not in the record how frequently it was driven upon. It was back there, but I don't think there's anything in the record that testifies, anyone testified how frequently that parking lot was driven on. The blocks didn't prohibit a car from driving on that area, correct? No, it wasn't a direct parking area itself, that area. It was not. But I don't believe it's relevant if plaintiff's court believes this was a great walkway. It could have been better, okay? But it was still a walkway. And if you look at the facts of the case... Does the act talk about walkways or does it talk about sidewalks? Sorry? The act. The act talks about sidewalks, but the cases have delineated that it should not be just sidewalks. It's a walkway. And a sidewalk is termed to be a foot pavement. It is used for a pavement that can be walked on. That's a foot pavement. And the Supreme Court said last year in the Murphy case that the statute should be construed as a whole and consider the reasons for the law. All right, so your theory really is that if it's a walkway, it's a sidewalk under the act? If it's a walkway, yes, it is. That's correct. But the act doesn't say that. It doesn't say that. But the court said a sidewalk should not be delineated so strictly that it prefers anything like a walkway. The U case, that was a walkway. Bremer case, that was a walkway. Well, can't you take in any condominium parking lot that even areas where people park their cars, some people will walk? The difference is, and if I can talk about Gallagher quickly, because I think the difference is with Gallagher, which plaintiff relies on heavily in his case. Gallagher is different, and here's why. Gallagher was a pathway, the snow was high, so there's a pathway within the snow cloud to the pathway of the driveway. And because of this, he blocked other pedestrian walkways to the house. That was, the snow cloud did a walkway for that purpose because of that, the snow was high. It was not a regular walkway, and the court said that. It was not a regular walkway. Here we have a regular walkway. In Gallagher, was it a factual determination below that it was a walkway? No, they said it was not a walkway. Why? Because there were other pedestrian paths to where they were going. The problem was, those were blocked because of the snow. It was not a regular walkway like we have in this case, or like in Flate. That was a regular walkway. It was a driveway. And as court said, it was under the Illinois Snow and Ice Removal Act. You think those two cases can be reconciled? Yes, absolutely. Gallagher and Flate? Absolutely. Flate, it was a regular pathway to go up the driveway to reach a condominium. So what's the regularity of it? It's how often it happens? Absolutely. I think that's a factor, a large factor, yes. And here you have a walkway, which was commonly used by a plaintiff, at least she said twice a week, and others in the condominium. Are you suggesting in Gallagher that it was not typical for them to walk up that driveway? No, no, it was not. And I think the case says that. It was not. It was very typical to do that. And the reason they had to do that in Gallagher, because the other pedestrian routes were blocked because of the snow. And that's the difference in Gallagher. So it can be reconciled. The other difference in Gallagher from these other cases, as far as I can tell, is the only case that has interpreted the Snow and Ice Removal Act that actually recognized that the act is in derogation of the common law. It has to be strictly construed. Respectfully, I think they all say that. They do? I believe they do. I believe they do. And I believe in Murphy they did as well. And Murphy certainly did. They did. The Supreme Court certainly reminded people. They did. Now, Murphy is implicable because in Murphy it was only a defect alleged. There was no improper snow removal alleged in Murphy at all. And that's why Murphy is very different, because it was only a defect in the property alleged, which we don't have here. We don't have a defect. So that was different in Murphy. But Murphy also says, you know, consider the statute as a whole, the reasons for it, which are important. And the court said in view as well, the action be applied so rigidly the purpose of the law to encourage property owners to remove snow and ice be thwarted. And I don't think the courts say you can't read the exceptions and conditions and limitations that the legislature did not expressly provide. They did provide. Sure, that's what they said, but that's not interpreting the statute strictly. That's doing the opposite of it. That's saying unless the legislature specifically limits the word sidewalk, we can read it broadly. A strict construction would do the exact opposite, wouldn't it? A strict construction would say we're going to give sidewalk its ordinary meaning. We're not going to read it any broader than what it actually says. Well, the ordinary meaning is very much. It's going to Justice Gordon's point. It doesn't say walkway. Ordinary meaning under the Webster-Strips language, a lot of cases cite, is foot pavement, a foot pavement. I would argue in this case, Your Honor. Does it have to be paved? No, it doesn't say that. If I shovel, if during the heavy snow in Chicago I shovel my back patio to reach my firewood and the only reason I shoveled it is so that I could walk out there to get firewood and bring it back, is that a sidewalk? No, it's not. Why not? Because that's in line with Gallagher. You only do that, there's no other typical way to get there because of the snow. That's Gallagher. We have a situation here where plaintiffs took this all the time, snow or not. This was her walkway. And I would point out, too, in their amendment complaint, first amendment complaint, 58 times they refer to it as a common walkway. Fifty-eight times they refer to it as a common walkway in their complaint. And now they're arguing, wait, it's a parking lot. But they refer to it as a walkway in their complaint. Their expert, Mr. Beddow, referred to it as a walkway. Again, is it a great walkway? I don't think that's for this Court to determine whether it's a walkway or not. And in this case, plaintiff has alleged in their complaint 58 times this is a common walkway. Their client, the plaintiff, testified it was a walkway. And their own expert testified it was a common walkway. It's a walkway. And under the law, it is covered under Illinois Snow and Ice Removal Act. I believe the Court correctly granted summary judgment. Based on the facts before it today that it had before it, I believe summary judgment was proper. And I ask this Court to affirm summary judgment. Thank you. Thank you, Ms. Horvath. Mr. Small? Very briefly, Your Honor, there's nothing that delineates this as a walkway. The bottom line is once we conducted discovery, it became clear from the person that cleared the area that it was a parking lot that the reason Ms. Hussey slipped was because he had cleared a parking lot of snow and piled that snow against the building. And the fundamental problem is that if you take defendant's position and the trial court's position, had Ms. Hussey walked over those parking blocks, that would be a walkway. Had she walked around a car parked there, that would be a walkway. If she, you know, the entire piece of property does not convert into a sidewalk under the Act simply because someone walks on it. That could have been immunized. The legislature chose not to. The Act should be narrowly construed in this case. The trial court's ruling should be reversed in the matter of a mandate. Thank you, Mr. Small. We'll take the matter under advisement and issue a ruling as soon as possible. Thank you both.